**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **Amigos de Tres Palmas, Inc.**<br><br>Plaintiff<br><br>v.<br><br>**Sandy Beach Living OZF, LLC;<br>BC&S Corporation**<br><br>Defendants | CIVIL No: 25-cv-1644<br><br>RE: CLEAN WATER ACT |

**COMPLAINT**

TO THE HONORABLE COURT:

NOW COMES the plaintiff Amigos de Tres Palmas, Inc., duly represented by the undersigned attorney, and respectfully states, alleges, and prays as follows:

**JURISDICTION AND VENUE**

1. This is a citizens' suit brought under section 505 (33 U.S.C. sec. 1365) of the Federal Water Pollution Control Act (hereinafter CWA, Clean Water Act or the Act, 33 U.S.C. secs. 1251 *et. seq.*, as amended). Plaintiff seeks declaratory and injunctive relief, the imposition of civil penalties, and the award of costs, including attorneys' and expert witnesses' fees, for the

defendants' repeated violation of sections 301 and 402 of the Act. (33 U.S.C. secs. 1311, 1342)

2. This Court has subject matter jurisdiction over the claims outlined in this Complaint pursuant to section 505(a)(1) of the Act. (33 U.S.C. sec. 1365(a)(1))

3. Venue is appropriate in the District Court of Puerto Rico pursuant to section 505(c)(1) of the Act (33 U.S.C. sec. 1365(c)(1)) because the source of the violation complained of is located within this District.

4. On September 10, 2025 the plaintiff gave notice of the violation and its intent to file suit to the Administrator of the United States Environmental Protection Agency, the Administrator of the United States Environmental Protection Agency - Region II, the Secretary of the Puerto Rico Department of Natural and Environmental Resources, and the defendants under section 505(b)(1)(A) of the Act (33 U.S.C. sec. 1365(b)(1)(A)) and 40 CFR 135.

5. More than sixty (60) days have passed since notice was served. To the best of the plaintiff's knowledge, neither the United States Environmental Protection Agency (EPA) nor the Puerto Rico Department of Natural and Environmental Resources (DNER) has commenced and is diligently prosecuting a civil or criminal action in court to redress the violations. In addition, neither EPA nor DNER commenced and diligently prosecuted an administrative action under section 309 of the Act (33 U.S.C. sec. 1319) or under a comparable

Puerto Rico law to redress the violations before the issuance of the notice letter.

## THE PARTIES

6. Plaintiff Amigos de Tres Palmas, Inc. (ATP) is a non-profit membership corporation organized under the laws of the Commonwealth of Puerto Rico. ATP's mission is to protect, conserve, and restore the natural resources and ecosystems of the Tres Palmas Marine Reserve and the municipality of Rincón.

7. Defendant Sandy Beach Living OZF, LLC is a limited liability corporation organized under the laws of the Commonwealth of Puerto Rico.

8. Defendant BC&S Corporation is a corporation organized under the laws of the Commonwealth of Puerto Rico.

## ALLEGATIONS

9. The defendants Sandy Beach Living OZF, LLC owns a construction site in Barrio Puntas, Rincón, Puerto Rico, where more than one acre of land has been cleared, graded or excavated or will be cleared, graded or excavated to develop 12 new lots for commercial and residential purposes, along with their corresponding infrastructure (hereinafter referred to as the site). The CRIM

number of the property is 095-020-052-38, and it has a total area of 6.6387 "cuerdas" or 6.4476 acres.

10. Sandy Beach Living OZF, LLC has operational control over construction plans and specifications, including the ability to make modifications to those plans and specifications.

11. Construction of this project commenced in October 2024, with land movement and clearing activities. BC&S Corporation has carried out those activities.

12. BC&S Corporation has day-to-day operational control of those activities at the project that are necessary to ensure compliance with any federal permit issued under the Act.

13. During rain events, runoff from the construction site carrying rocks, sand, and soil leaves the property. The polluted water reaches the homes and properties of ATP's members, causing inconveniences and forcing some of them to build defenses to try to keep the water out of their properties. Some members also have to clean up after the flooding to remove the dirt from their properties.

14. The flood with polluted water reaches the road and accumulates dirt on the pavement, causing unsafe driving conditions for ATP's members.

15. Polluted runoff from the site crosses several properties, enters a

public road, and then flows into a ditch, which in turn discharges into a creek, ultimately emptying into the Atlantic Ocean at Playa Escondida, where it discharges the dirt, causing a plume of polluted water on the beach.

16. ATP members use and enjoy the Playa Escondida area and the surrounding beaches. This plume is unsightly, affects the ecology of the beach and the surrounding area, and, since it is visibly polluted, constitutes a health risk. This situation impedes their use of the beach, affects the aesthetics they enjoy, and harms the area's ecology. This situation affects the use and enjoyment of the beach by ATP's members as well as their proprietary and environmental interests.

17. ATP members are affected by the discharge of this fill material into navigable waters. The proprietary, aesthetic, and environmental interests of ATP and its members have been, are being, and will be adversely affected by the defendants' illegal discharge of fill material into the creek.

18. The defendants have no permit under the Act to discharge those polluted waters into the ocean; the discharge continues as of this date.

## CLAIM FOR RELIEF

19. Plaintiff reallege, and set forth here in full, paragraphs one (1) through eighteen (18) of the present Complaint.

Complaint
Page -6-

20. The Clean Water Act is designed to restore and maintain the chemical, physical, and biological integrity of the nation's waters. 33 U.S.C. sec. 1251(a).

21. To accomplish the objectives of the Act, section 301(a) (33 U.S.C. sec. 1311(a)), prohibits the discharge of pollutants by any person except in certain circumstances, including in compliance with a permit issued under section 402 of the Act (33 U.S.C. sec. 1342).

22. The Clean Water Act requires parties who may discharge stormwater runoff associated with industrial activity to obtain a permit. 33 U.S.C. sec. 1342(p). This includes construction activities. (40 CFR 122.26(b)(14)(x).

23. On January 24, 2022, EPA issued the 2022 National Pollutant Discharge Elimination System Construction General Permit for Stormwater Discharges from Construction Activities (hereinafter referred to as the General Permit or the Permit, 87 Fed. Reg. 3522, January 24, 2022). This General Permit became effective from February 17, 2022, to February 16, 2027, and was amended on April 15, 2025 (90 Fed. Reg. 15653).

24. Generally, a person must obtain coverage under a General Permit if that person engages in construction activities meaning earth-disturbing activities, such as the clearing, grading, and excavation of land, and other construction-related activities (e.g., grubbing; stockpiling of fill material;

placement of raw materials at the site) that could lead to the generation of pollutants typically found at construction sites like sediments. (General Permit, Appendix A) That construction activity must also disturb one or more acres of land, or will disturb less than one acre of land, but is part of a common plan of development or sale that will disturb more than one acre. (General Permit, Section 1)

25. Permit coverage must be requested by any person who has operational control over construction plans and specifications, including the ability to make modifications to those plans and specifications. Persons with day-to-day operational control of those activities at the project that are necessary to ensure compliance with the permit conditions must also apply for a permit. (General Permit, Section 1.1)

26. At the outset, any person subject to the General Permit is required to develop a storm water pollution prevention plan ("SWPPP") which sets forth a plan for minimizing and eliminating, to the extent feasible, discharges of storm water associated with construction activities. Under the General Permit, the SWPPP must meet specific requirements and include certain information (such as the soil type, a description of the drainage patterns at the site, an identification of sensitive resources such as endangered species and historic buildings, and the person responsible for implementing each portion of the

plan). (General Permit, Section 7)

27. At the heart of the SWPPP is the selection of technology-based effluent limitations (TBEL) designed to eliminate, to the extent feasible, the migration of pollution from construction sites into the nation's waters. These limitations include measures to prevent erosion (such as the scheduling of the project to minimize the amount of land that is being graded at any particular time) and measures to capture sediment before it leaves the site (such as silt fences and sedimentation basins). (General Permit, Section 2)

28. The General Permit also requires the permittee to implement the SWPPP and to properly implement and maintain the TBELs to eliminate, to the extent feasible, discharges of storm water to the nation's waters.

29. The permits impose additional requirements, including those for inspection of the site during construction, maintenance of the SWPPP, and sometimes other records at the site, and final stabilization of the site, followed by termination of permit coverage.

30. Section 301(a) of the Act (33 U.S.C. sec. 1311(a)) prohibits the discharge of any pollutant into navigable waters of the United States, unless in compliance with various enumerated sections of the Act. Specifically, section 301(a) prohibits such discharges in violation of section 402 of the Act. (33 U.S.C. sec. 1342)

31. Section 402 prohibits the addition of any pollutant to navigable waters from any point source except as authorized by a National Pollutant Discharge Elimination System ("NPDES") permit applicable to that point source. (33 U.S.C. sec. 1342)

32. Section 505(a) of the Act (33 U.S.C. sec. 1365(a)) authorizes citizens to bring suit for violation of any "effluent standard or limitation" under the Act. Section 505(f)(6) (33 U.S.C. sec. 1365(f)(6)) defines "effluent standard or limitation" to include unlawful acts under sections 301(a) and 402 of the Act (33 U.S.C. sec. 1311(a), 1342).

33. Although prohibited by section 402 of the Act (33 U.S.C. sec. 1342), the defendants are currently discharging pollutants from their construction site into navigable waters without an NPDES permit, which in this case is the General Permit.

34. As a consequence of failing to obtain an NPDES permit, the defendants violate the following requirements of the General Permit:

A) Failure to develop and implement the Storm Water Pollution Prevention Plan required under section 7 of the Permit.
B) Failure to install sediment controls along any perimeter areas of the site that are downslope from any exposed soil or other disturbed areas as required under section 2.2.3 of the Permit.
C) Failure to protect storm drain inlets as required under section 2.2.10 of the Permit.
D) Failure to stabilize exposed portions of the site as required under section 2.2.14 of the Permit.
E) Failure to conduct regular inspections as required under section 4 of the Permit.

F) Failure to assemble a "stormwater team" that will be responsible for carrying out activities necessary to comply with this permit as required under section 6.1 of the Permit.

G) Failure to provide training to the "stormwater team" as required under section 6.2 of the Permit.

H) Failure to have a qualified person to conduct inspections as required under section 6.3 of the Permit.

35 The Act provides that any person who violates section 301 of the Act (33 U.S.C. sec. 1311(a)) or any permit issued under section 404 of the Act (33 U.S.C. sec. 1342), shall be subject to a civil penalty not to exceed $25,000 per day for each such violation (33 U.S.C. sec. 1319(d)).

**WHEREFORE,** the plaintiff hereby prays that judgment be entered against the defendants as follows:

A. Declare the defendants to have violated and to be in violation of sections 301 and 402 of the Act (33 U.S.C. secs. 1311, 1342);

B. Enjoin the defendants from discharging storm waters from its construction site in such a manner as will result in further violation of the Act and the General Permit;

C. Order the defendants to pay appropriate civil penalties of up to $25,000.00 per day of violation for each violation of the act under sections 309(d) and 505(a) of the Act, (33 U.S.C. secs. 1319(d), 1365(a));

D. Award the plaintiff costs (including reasonable attorney, witness, and

```
                                        Complaint
                                        Page -11-
```

consultant fees) as authorized by section 505(d) of the Act (33 U.S.C. sec.

1365(d)); and

E. Award such other relief as the court deems appropriate.


**RESPECTFULLY SUBMITTED**.
In Quebradillas, Puerto Rico, this 25th day of November 2025.


s/Miguel Sarriera-Román
Miguel Sarriera-Román, Esq.
USDC-PR 207714
Attorney for the plaintiff
Miguel Sarriera-Román Law Office
1104 Calle San Miguel
Quebradillas, PR. 00678-2803
Phone: (787) 630-8319
email: miguelsarriera@yahoo.com